313-0097 People of the State of Illinois, Appalachia, by Richard Lennart v. Michael Vinson, Pallant, by Alexander Munches Mr. Munches Good afternoon, Council. May it please the Court, Alexander Munches of the State of Illinois Defender's Office, representing Mr. Michael Vinson. Mr. Vinson appeals for prosecution for abuse and solicitation, an offense that the General Assembly carefully and narrowly defined to include two distinct terms of art, aggravating criminal sexual abuse and sexual conduct. This offense is not a matter of common knowledge, so it is critical that the jury receive a complete and proper set of jury instructions. Did your honors here me before? I was able to hear you. If you feel more comfortable starting over. We'll start your time now. Sure. Thank you. Mr. Vincent appeals from a prosecution for indecent solicitation, an offense that the General Assembly carefully and narrowly defined to include two terms of art, aggravated criminal sexual abuse and sexual conduct. This offense is not a matter of common knowledge, so it's critical that the jury receive a complete and proper set of jury instructions. But the record below is riddled with jury instruction errors, and all having to do with the elements of the offense. Given the first two errors, one of which the State concedes, any conclusion by the jurors about Mr. Vincent's intent would simply be a guess. And the third error directed jurors to find that Mr. Vincent in fact solicited the complaint, that is, notwithstanding his contrary testimony. In many ways, this appeal is an easy reversal. The State has conceded one error in a case where the evidence was closely balanced. This case turned on the jury's credibility determinations. Much like Naylor and Stigall, the Supreme Court cases cited an opening brief, which the State failed to distinguish. Here, there was no physical evidence that a crime occurred, no video, no text messages, no emails. There are no occurrence witnesses. Mr. Vincent and the complainant testified to two plausible but inconsistent accounts of the months they lived together. Similarly, Mr. Vincent and the investigating officer testified to two plausible but inconsistent accounts of the investigation. Given the nature of the evidence, guilt or innocence ultimately turned on the credibility of Mr. Vincent and the complainant. Moreover, the parties agreed that the jury never received a definition of sexual conduct, an element of indecent solicitation that is not a matter of common knowledge. Any conclusion by the jurors on this point about Mr. Vincent's intent would just be a guess. The instructions erroneously suggested that Mr. Vincent had the requisite specific intent if he simply made a verbal or nonverbal statement that was sexual in nature. Thus, the jury could have interpreted sexual conduct to include the complainant's testimony that Mr. Vincent called her cute, or the testimony that Mr. Vincent exposed himself to her. Such conduct, however, would not meet the statutory definition of sexual conduct. Finally, States Instruction 9 directed jurors to find that Mr. Vincent, in fact, solicited the complainant, that is, notwithstanding his contrary testimony. There are two statements at issue in the trial. The offense, as testified to by the complainant, and the videotaped interrogation. Mr. Vincent and the complainant, as a matter of background, did live together. The complainant alleged that at some fleeting moment during that time, Mr. Vincent exposed himself and asked her to touch his penis. The investigation later began. The videotaped interrogation occurred. Mr. Vincent first denied the accusation, but later made admissions. Then the trial occurred. At that trial, there were two statements at issue. The complainant's testimony about the event itself, and the video of the interrogation. Mr. Vincent took the stand and denied that the event occurred, and explained why he had made false admissions in the interrogation. State Instruction 9, the Statements by Defendant Instruction, was designed so that any rational juror reading it could not conclude that it only applied to, say, the videotaped interrogation. Now, a legal reader may expect it just to apply that. But, Your Honor, I have to remind you, this is a jury trial, and the jurors are not legal readers. This was a speech crime, and the actus reus of a speech crime is a statement. So here's the problem. The complainant testified that Mr. Vincent made a statement to her that would constitute the actus reus of the offense. In turn, Mr. Vincent took the stand and testified he did not ask the complainant to touch his penis. The trial court instructed the jury, and I quote, You have before you evidence that the defendant made statements relating to the offense charged in the indictment. It is for you to determine what weight should be given to the statements. The instruction omitted the pattern instruction's bracketed language,  it is for you to determine whether the defendant made the statements, and if so, what weight should be given to the statements. As a result, this instruction erroneously told the jury to begin its analysis by weighing the statement itself. This settled the credibility determination that only the jury should have made. It directed a factual finding against Mr. Vincent. What did the videotape show the defendant saying? So the videotape is, it's a long videotape. It's about 20 minutes long, and there are a lot of different things. Well, in key, not everything, but in key part. In key part, so he had denied making a statement at the start of the video, and by the end of the video, he admitted making a statement, which is why it's critical for him to take the stand and say this was a false admission. So this factual dispute was very much up in the air for the jury to settle. Well, that is until state's instruction 9 was submitted to them. It wasn't disputed that he made that prior statement. He tried to explain it away. Well, it was disputed, because he took the stand and said, I did not make that statement. And then counsel said, then why are you in this videotape interrogation? The recorded statement that he made is not in dispute. Exactly. Yes, Your Honor. And then offered, I think, the just kidding defense that I might have said. That was in the videotape, yes. Yeah, I might have said that, but I didn't mean it. Exactly. That's why we say it's not a confession, it's an admission. And then when he took the stand, it became a false admission. He explained why he made that admission and said, well, I thought the officer would never let me leave unless I told him. The prior statement instruction normally applies to a statement that is not recorded, that the defendant did not make. In this case, he agrees he made that prior statement. Of the videotape, yes. He's just attempting to explain why it wasn't a truthful statement. Correct, Your Honor. So how does the omission of that bracketed language potentially affect the outcome of this case? Sure, because two statements were at issue. The act is raised to the offense in the videotaped interrogation. A legal reader, legal minds say, oh no, 306, 307, that goes to videotaped interrogations. You drop the bracketed language when there's a video of the interrogation. You include it when there's not. But the problem here is that it's a speech crime. And the jurors were never told that that instruction is limited to the video. That was something the lawyers and the judge knew. The jurors did not know that. The jurors knew that a statement was at issue in two different ways. And a rational juror could have read this instruction as applying to the complainant's testimony. That's the big danger here. Now, the great thing about what this court can do is we don't have to write a new jury instruction. It's just that in an indecent solicitation prosecution, it behooves counsel of the court to use the bracketed language. That's it. Very simple fix. Unfortunately for Mr. Vinson, there was structural error that requires reversal in a new trial. In conclusion, oh yes. Okay, you're arguing this under the second prong. You're not arguing the evidence is closely balanced. I am arguing the evidence is closely balanced. I'm just pointing out that this is structural error as well. In conclusion, the offense of indecent solicitation is not a matter of common knowledge. So it's critical that the jury receive a complete and proper set of jury instructions. Below, the record is riddled with jury instruction errors, all relating to the elements of the offense, which is not a matter of common knowledge. Thus, Mr. Vinson respectfully requests that this court reverse its conviction and remand for a new trial. Thank you. Is there a question? I guess not. Mr. Leonard? May it please the court, counsel, the people maintain that the defendant has forfeited the jury instruction arguments at appeal because they were not preserved below. I disagree that the evidence was closely balanced here. The evidence was overwhelming. The victim testified, she is a 14-year-old girl, that the defendant had called her out from her bedroom to the living room. The defendant had his penis exposed and she testified that he used the words, will you play with it? And she said no and ran back to her bedroom and closed the door. The defendant spoke with the police, waived his Miranda rights, and he did make the statements that Justice Wright referred to. He said, well, of course, first he denied it, and then after a while he stated that yes, his penis was exposed and he had called the young girl out of her bedroom and asked if she would want to touch it. Also, the police officer who investigated and took the statement testified at trial too. So this is not a he says, she says case. We have the defendant actually admitting to the crime and now trying to explain it away. He says that he was pressured into making this statement and that he thought he wouldn't be able to go home unless he made a statement that pleased the officer. Well, I think Justice Wright, you probably have seen the video. If you watch the video, he's not pressured. He's sitting there with the officer. They're having a polite conversation. He denies it at first, and then the officer asks him a few more questions. And then he does make the admission confession. And then at the end he says, I knew it was wrong. I know she was only 14 years old. I'm 32 years old. I want to apologize for doing this. He seemed very remorseful at the end. And at the end of the video, he's giving a meal from Steak and Shake and he seems to enjoy the meal right there. So there was no pressure here. The defendant simply made a statement and now he's trying to explain it away. He has no credibility. So that's the first prong. The plein air test, the burdens on the defendant. To prove that, I think you'll agree with me that the evidence was closely balanced and the first prong of the plein air test does not apply here. With regard to the second prong... Whether the error was so serious that it affected the trial and denied the defendant a fair trial. I cite two cases with just a little background. The legislation had been re-passed and it included the language with intent to commit the offense of whatever it was. And the jury instructions were not up to date with the criminal offense. Nor was the charging instrument. It's kind of interesting the charging instrument was outdated too and didn't allege that he solicited an act with the intent that the act be committed. So that's how all of this cascaded into erroneous jury instructions. Yes, the jury instruction was not up to date at that time and it has been updated right now. So hopefully this will be the last time that this error will occur. But we agree that we maintain it's not plein air. Now the first time it occurred in this state, it was in People v. Carter. They addressed the issue. The defendant there was not given the jury instruction as it should have been. It said with the intent to commit the offense. However, Carter held that this was not plein air and found that the issue was forfeited. The case that came after Carter was Rex Road. I cite that in my brief also. And in that case they also found that there was no plein air under either prong and that the defendant had forfeited the argument on appeal. So therefore with regard to that part of the jury instructions, I believe it's clear that the defendant has forfeited that argument. With regard to the failure to give the jury instruction on sexual conduct. The sexual conduct definition includes not only touching of skin to skin, but also touching through clothing or transfer of semen. The jury heard the defendant's statement right from his own mouth that he asked the victim to touch his penis. Any juror, I believe, would be clear that that was sexual conduct and that would fall clearly within the definition of sexual conduct. So even though they did not get that instruction, the outcome of the trial would not have changed even if the jury instruction had been given. I believe sexual conduct would be established here by anybody's terms even if they're jurors without any legal knowledge. Finally, the instruction without the bracketed material, whether the defendant made the statement. It's our position that there was no air here as Justice Wright said. In this case the defendant admitted the statement, he only tried to explain it away. So there was no air. Even if there was air, it doesn't rise to plain air or ineffective assistance of counsel, which defense counsel has suggested. Because here there's no prejudice. The evidence was so overwhelming, this defendant would have been convicted of the offense even if the airs had not occurred. Or whether the jury would have been instructed on each element that the defense suggests was air. So if you don't have any questions, I'd ask that you affirm the defendant's conviction. Mr. Leonard, I'm going to pick on you just a little bit on the issue of omitting an element of the offense. Yes. The outdated jury instructions. In this case, unlike Carter, and Carter was a defendant that didn't know the victim and communicated and she came to a location and there was a discussion about sex acts between this man that didn't know the victim or live with the victim. So the evidence in that case is a little different from this case where the defendant lives with the victim. He admits making the statement, which would qualify for one of the elements that you asked her to do something. But the omitted element in the jury instruction was that he actually intended that that act would take place. And his defense is, I said it, but I didn't mean it. So by omitting the element of intended for the sex act to take place, why isn't that structural error? I'm interested in your argument. Yes. Well, it would be up to the jury to decide whether the defendant was credible or not credible. But they weren't instructed to find that he actually intended. They were instructed to find that he asked or made the statement, solicited, but they weren't asked to decide whether he intended to go forward with that act. And that's what I'm struggling with. Why isn't that structural error? That is not structural error because structural error is so egregious that the defendant was denied a fair trial. The only way you can show intent, you can't show intent unless it's by somebody's actions or somebody's words. You can't see intent. It would be up to the jury to determine whether there was intent. And by looking at all of this evidence, any rational person could see that the jury could find that the defendant had the intent to do it and that he was not just joking. You've answered my question. I appreciate it. Okay. Thank you. Just a few points in rebuttal is all. Regarding the closely balanced nature of the evidence, the state says that this was not a he said, she said case. But then also says that the defendant had no credibility. I think the question is, was this a he said, she said case? And I think the answer is yes. And from there, the state pushes on and says, well, what he said was not credible. That's not the question. The second point is that the state has also ignored some of the evidence that came from the complainant. It recounts the state's case up to the point where the complainant also said that Mr. Vinson had flirted with her and called her cute. Mr. Vinson had also exposed himself to her. These are actions that are, if true, sexual in nature. And a jury without a sexual conduct definition may think that Mr. Vinson had the intent to commit indecent solicitation. But these actions do not satisfy the definition of sexual conduct. Well, look at all the evidence. Including the bad evidence. Including the bad evidence. But the other evidence is he's standing there with his penis exposed and calls this little girl out and says, do you want to touch it? And he told, and he says that on a video to the police, right? Yes, Your Honor. But I was just joking. What else is the jury going to believe? That he didn't intend for that to happen? Well, Your Honor, he did take the stand. And he's telling us. And on the stand, he said, didn't he, that, well, I just thought the police wouldn't let me go unless I confessed. Yes, Your Honor, and he was interrogated well before that videotape started. Okay, well, let's talk about the credit. What person would think that the way to get, that the key to the jailhouse door was to confess to solicitation, indecent solicitation of a minor? Gee, if I just tell these coppers that I, I did, that I confessed to this kid, then they'll send me home. Sure, the U.S. Supreme Court in Miranda identified well for us the inherent coercive pressures in the interrogation room. And sitting in the appellate courtroom is quite unlike that, Your Honor. The state did not acknowledge the fact that this defendant was interrogated for quite a bit before that videotape flicked on. This was an inherently coercive atmosphere. This defendant had been pursued by the officers for weeks. I think that when the defendant took the stand, it was very much a live question for the jury about the false, these false admissions. How long was the interrogation? The videotape itself is 20 minutes, but there's an interrogation before that. Your Honor would want to look at the part of the record with the motion to suppress the pretrial hearing. There is an interrogation well before this. This is a sort of question, question, question. Once we get the answer we'd like, we flip the video on and make a statement for the jury. Finally, Your Honors, the state does not appear to take any issue with the holding of Delgado or the reasoning there. With regard to the intent and the missing jury instruction sexual conduct, we submit that Delgado controls. But no matter what error this court picks, either it be the missing intent element from indecent solicitation, the missing sexual conduct instruction, or the failure to include the bracketed language in the statements by defendant instruction, either under prong one or prong two, or through ineffective assistance, this court should reverse and remand and order a new trial. Thank you. Thank you both for your argument today. We will take this matter under advisement and get back to you with a written disposition within a short time.